## Miller *v.* Doyle, Appellant.

*Appeals—Failure to print testimony—Assignments of error—Receiver.*

Where a receiver has taken an appeal from an adverse decree, and, owing to lack of funds, has not printed the testimony, and it appears that the assignments of error present questions that cannot be determined without a review of the testimony, the decree of the lower court will be affirmed.

*Equity—Account—Corporations—Receiver—Corporation officers.*

The receiver of a corporation who asks for an accounting from its directors and the payment by them of an amount alleged to be due to the corporation, less credits to which they are entitled, has no standing to object because in stating the account the directors are allowed credit for money advanced by them to the corporation and for salaries due for services performed under an agreement with the corporation.

*Corporations—Officers—Salaries—Excessive salaries.*

A finding that the amount fixed for the salary of an officer of a corporation is excessive, does not deprive him of the right to an allowance of an amount found to be reasonable.

Argued Jan. 10, 1905.     Appeal, No. 189, Jan. T., 1904, by plaintiff, and cross appeal, No. 292, Jan. T., 1904, by defendants, from decree of C. P. No. 4, Phila. Co., June T., 1902, No. 1482, on bill in equity in case of N. Dubois Miller, Receiver of the Pennsylvania Mutual Life Insurance Company v. John M. Doyle and William P. Elder.     Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity for an account.

AUDENRIED, J., filed an opinion which was in part as follows :

.. This bill was filed by the receiver of the Pennsylvania Mutual Life Insurance Company.     It alleges that Doyle and Elder,

two of its directors, who together held more than a majority of its shares, have converted to their own use certain of its assets, and prays " an accounting between the said defendants and said company represented by him as its receiver and a decree in favor of the plaintiff as such receiver against the defendants jointly and severally, for the sum of $50,000 with interest, less any just credits which may appear due to said defendants or either of them."

The trial judge finds that the defendants as officers of the insurance company satisfied certain mortgages held by it to secure an indebtedness of $30,000 on sundry real estate owned by them individually, in exchange for certain obligations of the company held by them. This step was taken in pursuance of a settlement made between themselves as individuals and the company. The obligations canceled included certain claims for salary alleged to have been earned by the defendants or by other officers who had assigned their claims to them. The trial judge finds that on the canceled obligations the company actually owed the defendants $4,497.01 for salaries and for cash advanced for its account, with interest thereon, $6,779.54. Doyle and Elder thus appear to have satisfied mortgages aggregating $30,000 upon a payment of $11,275.55 only; and they are therefore charged with the difference, viz: $18,723.45. In addition to this the decree nisi charges the defendants with the sum of $1,666.66, which was illegally paid by the officers of the company to one Conroy and which was traced directly into their hands, they having at the time of its receipt full knowledge of the transaction. Against an aggregate charge of $20,390.11, the defendants are allowed a credit of $9,125.51 for salaries earned and cash advanced since the satisfaction of the mortgages, and they are required by the decree nisi to pay to the plaintiff the sum of $11,264.30 with interest.

*          *          *          *          *          *          *          *

Such of the exceptions filed by the plaintiff as seem worthy of notice raise three questions, which are as follows:

1. It is contended that the defendants should have been charged with an additional sum of $16,650, which is the amount of the shares for which a certificate was issued to Joseph Conroy, on the ground that they are jointly responsible with him

for the subscriptions to those shares, and that its amount has not been paid into the company's treasury.

On this point we may observe that it is of little consequence whether or not the defendants were responsible for the subscription money that should have been paid in on the shares, for which a certificate was issued to Conroy December, 1895, because that money was fully paid, ten per cent thereof being paid in cash, and the balance by the delivery to the company of the bond and mortgage of one Shoemaker in the sum of $15,000. It is true that under a mistaken view of the law the defendants consented to the cancellation of Conroy's certificate for these 333 shares, returned his $1,666.66 to him and satisfied the Shoemaker mortgage, but this resulted in a loss of only $1,666.66 to the company, since immediately on being advised of the illegality of that step, the defendants compelled Shoemaker to substitute, in the place of that which had been satisfied, a new mortgage identical with it in amount and security. It was not proved that this mortgage lacked security when it was given to the company, although it seems to have since been discharged as a result of proceedings on a prior lien; and even if this fact be taken as evidence that the mortgage moneys were insufficiently secured, there is no evidence before us to show that the defendants had knowledge of its lack of security or to charge them with the responsibility of making a bad investment. With the $1,666.66 lost as above mentioned the defendants have in fact been charged.

On the question whether the defendants were joint subscribers with Conroy for the whole of the thousand shares issued in December, 1895, we are satisfied that the finding of the trial judge is correct.

2. It is objected to the trial judge's findings that the defendants should have been required to pay the plaintiff whatever moneys of the company they paid to themselves illegally, whether by mistake or not, without any allowance of credit, and that their counterclaims for salary and cash advances should be postponed for adjudication to the audit of the receiver's account.

In this view of the matter we cannot concur. To answer the plaintiff's objection it is necessary only to refer to the prayer of his bill, which has been quoted above. He prays for

an. accounting, and cannot therefore reasonably object when·an account is stated. He prays for a decree for the payment to him by the defendants of $50,000, less any just credits which may appear due to said defendants or either of them. Surely it comes with bad grace to complain that the trial judge has endeavored to ascertain to what credits the defendants are entitled against the sum which they withdrew from the company's assets. If the company owed much it might be our duty to overlook the letter of the plaintiff's request and relegate the defendants to proof of their claims before the auditor to be appointed to distribute the fund in the hands of the receiver, so that they should receive their just pro rata along with other creditors. But it nowhere appears that the company owes a dollar except to the defendants themselves and to Robert E. Doyle, who holds its life policy for $1,000. To meet the company's contingent liability on that policy and the expense of these proceedings the balance of $11,264.60 found against the defendants will amply suffice. To require them to pay more would benefit nobody but the receiver and his counsel, and with their profit in this matter we ought not to concern ourselves to an extent beyond seeing that they receive reasonable compensation for their services.

3. It is urged that if an accounting be gone into at this time the defendants should not be allowed any credit whatever in respect to salary. The plaintiff's argument in support of this is reducible to the proposition that the officers of a corporation who happen to be also members of its board of directors in which body is vested the duty of fixing salaries, are entitled to no salary at all if· the board of which they are members votes them a salary which is unreasonably high. To state such a proposition is to refute it. All that can possibly be asked is that the salary voted shall be cut down to reasonable limits. It can make no difference that the salaries voted to the defendants were fixed with a view to helping them to get rid of their mortgage obligations to the company. If they were excessive, they were excessive and no more, no matter what purpose the defendants and their friends may have had in mind in voting them. It is unimportant whether they were paid by the cancellation of the company's securities or by the transfer of the company's property. The only salary which the trial judge has

allowed the defendants is in respect to services performed by them subsequent to the time when the salaries were voted to them. If no salaries had been voted the defendants would have been entitled to claim nothing for their services from the company because of the presumption of law that has been referred to in the discussion of the first point raised by the exceptions. The resolution of the directors, adopted May 7, 1896, providing for the payment of salaries to the directors, must at least be given the effect of rebutting the presumption that their services thereafter were to be rendered gratuitously. It is clear that from that date on there is no ground whatever for the assumption that the defendants intended to serve the corporation without pay. The trial judge has given no greater effect to the resolutions just mentioned than this. He has treated the defendants and the other officers of the corporation as if they had undertaken to work for whatever their services were reasonably worth. That they have served the corporation in the handling of its complicated and delicate business affairs, is undisputed. The compensation which the trial judge has fixed for them, in the light of the evidence adduced before him, seems to us to be perfectly reasonable, and we are satisfied that the defendants are entitled to the allowance given them.

In addition to these objections the plaintiff has excepted to many findings of facts on minor or unimportant points. In reference to these objections it is needless to say more than that a careful reading of the pleadings and the proofs reveal no reason to disturb the findings of the trial judge.

For the reasons above outlined we have determined to dismiss all the exceptions filed by both of the parties to this cause, and to make absolute the decree nisi entered on the findings.

Counsel will prepare a form of final decree to be entered in the cause for the payment of a specific sum of money by the defendants to the plaintiff, which sum shall include interest calculated on the basis indicated by the decree nisi up to the date of the filing of this opinion.

*Error assigned* was the decree of the court.

*John J. Ridgway,* with him *J. Rodman Paul,* for the receiver.

*Alex. Simpson, Jr.*, with him *Joshua R. Morgan*, contra.

OPINION BY MR. JUSTICE FELL, March 6, 1905 :

The appellant, having no funds in hand as receiver, has not printed the voluminous testimony taken at the trial but accepts the court's findings of fact, and we are asked to consider only the assignments of error which relate to the inferences drawn from the facts as found and to the law as applied thereto. We are met, however, at the outset by the difficulty that the first two assignments present questions that cannot be determined without a review of the testimony.

The bill was filed by the receiver of an insurance company to secure an accounting by two of its directors who, it was alleged, had converted certain of its assets to their own use. In the decree entered May 5, 1904, they are charged with interest on " excessive credits on mortgages canceled " from November 17, 1897, the date when the mortgages were satisfied. It is claimed in the first assignment that they should have been charged with interest on the full amount of these mortgages before deducting the company's indebtedness to them. Prima facie this contention is correct. But it does not appear that any request was made for a finding on the subject, and it does appear that as subscribers to a guarantee fund, the defendants were entitled to interest on the amount of their subscriptions represented by these mortgages. The interest charges would in this way be equalized. This fully explains what on the face of the account appears to be an error, and in the absence of the testimony we must accept the finding as correct.

The second assignment, that " The court erred in not finding the indebtedness of the defendants to be $46,667 with interest," gives rise to a pure question of fact that cannot be considered without the testimony. The remaining assignments are fully answered in the carefully considered opinion of the court.

The decree is affirmed at the cost of the appellant, and the cross appeal of the defendants, No. 292, January Term, 1904, is dismissed.